Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Appellant Victor Garcia-Santos. I would like to reserve some of my time for rebuttal. Sure. Mr. Garcia-Santos is here because he challenges the district court's denial of his motion to suppress. And the first issue I want to focus on is the fact that the district court's ruling was premised on clear factual errors that undermine the very basis of its ruling. I want to go back and talk about what happened on the day in question. There were four to eight law enforcement officers in the neighborhood. They had a profile that they had been given of a Mendoza drug trafficking organization personnel based on 90 to 105 personnel. It included the age, height, race, hair color and hair length of the individual, in addition to the color, make and age of the vehicle, the time of the day that the run commenced, from where the runner would come out and the location of the vehicle the runner was going to be driving. So why doesn't that all fall into that old Supreme Court case of Draper versus the Illinois or the United States? Remember where the information supplied to the drug agent was that Draper was going to be on a train and was going to be arriving at Chicago Union Station at three o'clock and so the agents were there at three. Sure enough, the train arrives. A man meeting the description gets off the train carrying a satchel and the agent walks up and says, what's in the satchel and we're off to the races. Why isn't this a Draper situation? Well, I think there are some discrepancies. First of all, they couldn't tell from where Mr. Garcia-Santos was coming. There were four units. He walked through the gate, which is the common entry to the fourplex, right? Right. There was a fourplex. So they didn't know which And the agent knew that he lived in Unit B, which was behind the gate. He didn't know which unit Mr. Garcia-Santos came from. He just knew that he came through the fourplex that he lived in Unit B. That's correct. I'm not sure I understand why that even matters. Let me tell you what I understand to be the fact. You set me straight. Thank you. We'll sort of fast forward past what you've got there. At some point, the cops get out of their car and they go up to talk to him, right? Yes. They say that all they wanted to do was talk to him and the judge apparently believed that testimony. Next thing happens, he sees what looked like police coming up to him and he reaches down under the seat of his car and the police officers are afraid he may have a gun. So they pull him out of the car, quickly frisk him and quickly feel back in the car seat where he was just sitting so he doesn't reach back and get anything that's hidden in the seat. So far, do I have it right? Well, I think there's some discrepancies on the specific facts, which is what I was going to go to. Okay, but this is what the judge found has happened. Yes, and that's some of the issues that I'm claiming are clear. What part of that is the judge clearly wrong? What I'm arguing is factually wrong is that there's a call that Mr. Garcia, Detective Harden called out. Now, he didn't testify, but he said that he saw Garcia Santos reach either under the seat or in his crotch area. This is the testimony in front of the judge? Harden didn't testify, but there were several versions that were presented to the court. Someone testified to that? Someone testified, yes. And the judge believed it? The judge, yes. Okay, now why isn't the judge entitled to believe that? Well, because what I'm arguing is that the issue of where he was reaching is a key issue because the district court's finding was specifically based upon the fact that the search was narrowly circumscribed to the specific area in which Detective Hoffman saw Mr. Santos reaching. Let's go back to my scenario. Yes. They see him reach somewhere, something. Yes. As soon as he apparently sees that the cops are coming to talk to him. They pull him out of the car. They frisk him to make sure he doesn't have a gun, and they reach back and feel the seat, and that's where they find the drugs. I'm having a hard time understanding how you win on those facts. Well, I'm specifically relying upon the district court's finding that the search was narrowly subscribed to the specific area in which Mr. Garcia Santos was seen reaching. Is it true that they frisked him? Yes, I think as he was pulled out. Any problem with that? No. What I'm focusing on is more the fact that the district court relied upon a search that was extremely limited to the very area where he was seen reaching, and I think that's the clear error in the district court's finding. Why is it error for them to have, after they pulled him out of the car, felt the driver's seat to see if there was anything in the seat? Because what? There were two witnesses who did testify at the hearing, two officers. Detective Nava said that she saw Detective Hoffman reach underneath the seat. There was a seat cushion on top of the seat. Detective Hoffman said he submitted a declaration, and he also submitted a report. In those reports, he said that he found the items underneath the seat cushion. But when he appeared at the evidentiary hearing, he changed his story and said that while he saw Mr. Garcia Santos reach underneath the seat cushion, which was on top of the seat, and then extract his hand from underneath the seat cushion, he didn't find any drugs there. It was only when he looked underneath the seat itself that he found the drugs. I don't see how that changes anything. That changes things because the district court specifically relied on the fact that the drugs were found exactly where Mr. Garcia Santos had been seen reaching. So it's the premise of the district court's ruling. I suppose he was wrong about it. It's just exactly they found it where you say they found it. Because the district court told us that it would be a far different case if that happened, if the district court specifically said if Hoffman searched anywhere but where Victor Garcia Santos was seen reaching, it would be a different case. I didn't read it that narrowly. I thought what the district court was referring to was, you know, had he reached, had the officers looked over on the driver or the passenger side, or if they'd gone into the trunk of the car, that would have been different. I'm having the same problem Judge Silverman is having because I'm looking at Detective Hoffman's report at ER 56, and he says, as Santos appeared to notice the three of us approaching him, he immediately began to reach under the seat cushion of the front driver's seat. Detective Harden called out to me that Santos was reaching his hand under his seat. We could not see what Santos was reaching for, and it appeared to me that he could be searching for a weapon. And you want to parse that to say the only place they could look was under the seat cushion, as opposed to under the seat of the driver. And I just think as long as there is no error in the fact that there was furtive movement in that part of the car, then it's fair game for them to look under the seat of the driver, regardless of whether or not they saw his hand clear down underneath the seat. I understand, Your Honor. I mean, but my argument is that, first of all, one of the things that I wanted to focus on when I was discussing the profile that they had been given, was that even though they had 90 to 105 of these employees, there's no evidence that they were armed. So the district, the officers did not approach with any information. My position is that a trained narcotics officer who's handled God knows how many drug cases, when he sees that kind of movement, it's not reasonable for him or her to think that there might be a weapon involved because we're dealing with drug dealers? I think that he's being... That would be contrary to the experience of this judge with regard to all of the narcotics cases and searches that I see. Well, I think in this case they'd been given a specific profile based upon a substantial number of employees, and the information that they were armed was not given. Well, but the district court found that that's not the relevant inquiry. The relevant inquiry, which I think is what the law says, is would a reasonable police officer faced with those facts have an objectively reasonable fear that the suspect might be armed? And the district court said, in this circumstance, I think that's a reasonable fear. And under Terry, he's entitled to look. I understand, Your Honor. But I think that in this case, there's an issue of how far he was entitled to look. When you want to limit it to the seat cushion, he can't look underneath the driver's seat beneath the seat cushion. Well, that's our argument, Your Honor. That's your argument? Yes, because that was in fact... I see you're down to a little over a minute. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Carol Chen for the United States. At the crux of this appeal are the factual findings made by the district court and the significantly deferential clear error standard to be applied to those factual findings. With respect to the issue of the scope of the search of the vehicle and to follow up on Judge Talman and Judge Silberman's questions, first of all, the district court found specifically that the defendant was observed removing his hand from under the seat cushion. The district court also found that Detective Houtman conducted an extremely limited search underneath that seat cushion, and that's where he found the narcotics which were seized. Neither finding was clearly erroneous. In fact, each finding is plausible in light of the record reviewed in its entirety. The fact, first of all, the finding that Detective Houtman observed defendant removing his hand from under the seat cushion is supported by Detective Houtman's own declaration at paragraph 11, as well as his incident report and as well as his testimony during the evidentiary hearing. The finding that Detective Houtman also pulled back the seat cushion and found the heroin seized is also supported in the record in both his declaration and the incident report. The district court also made the further factual finding that Detective Harden had called out that the defendant was reaching under the seat. This factual finding is also plausible in light of the record before this court. And as a result, therefore, even if Detective Houtman had found the seized heroin from under the seat as opposed to under the seat cushion itself, that would still be a limited search to the area that the defendant was seen reaching towards. I thought they found the drugs under the seat, not the seat cushion. Your Honor, I believe they found it under the seat cushion. The testimony was a little unclear, but the declaration as well as the incident report. But I submit to the court that Michigan v. Long actually does not just limit the search to the areas that the defendant was specifically found or observed reaching toward in the vehicle. Rather, the Supreme Court in Michigan v. Long specifically allowed the search of the passenger compartment of an automobile limited to those areas to which a weapon may be placed or hidden. So it's essentially the Shymel Lunge Rule, right? I'm not familiar with that rule, Your Honor. Shymel v. California, that you can search within the immediate area? Shymel, yes, Your Honor. C-H-I-M-E-L. Thank you, Your Honor. Yes. Maybe I mispronounced it. I apologize. I do think that... It's the state of Washington here. My Spanish is a little rusty. I'm talking about the lunge reach and grasp, Your Honor, the lunge reach and grasp. But yet, Your Honor, yes, Your Honor, I submit that that is correct, which is in Long itself, the court found that a search of a leather pouch which had been tucked underneath the armrest of the front seat, that search was permissible. And that was because the search was restricted to those areas to which the defendant would generally have immediate control and contain a weapon. In Long itself, there's nothing in the record that suggests that officers had seen the defendant specifically reach underneath the armrest of the driver's seat. So I believe the inquiry here itself is a little bit misframed in the sense that it's not necessarily limited to where the defendant was observed reaching. But even if that were the framework to be discussed here today, the record shows that the district court's factual findings that the defendant was observed reaching both under the seat itself really makes this exercise in terms of whether or not the drugs were found underneath the seat cushion or under the seat itself irrelevant. Wasn't the testimony that when they first observed him exit the gate, he got into the left rear passenger seat and they could see him doing something with his hands underneath the driver's seat in front of him, but they couldn't see what he was doing? My understanding, Your Honor, is that he did get into the back seat behind the driver's seat and he was leaning forward as if he was doing something in the passenger compartment of the driver's seat area for about 45 seconds. This is what, a Toyota Corolla we're talking about? It's an older model gold Toyota Corolla four-door sedan. So is it a split bench seat in the front? Is that what it is? Bucket seats? That is not in the record, Your Honor, and I do not know. With regards to the reasonable suspicion that that defendant was armed and dangerous, I submit to the court, first of all, the several lines of cases, including United States v. Flatter, in which this court found that some crimes are so frequently associated with weapons that the mere suspicion that an individual has committed them justifies a pat-down search and asides to two cases specifically, which are narcotics-related cases, United States v. $109,179 in United States currency, as well as United States Post. There, as well as Terry v. Ohio itself, where an officer saw two or three men mingling around in front of a store and believed, based on his experience and training, that they were potentially contemplating a daylight robbery. Based on his experience and training, he believed that they may likely use weapons as a result of the nature of the crime of a daylight robbery. And based on that alone, there was no indication he saw that they were making any furtive movements or that he saw any bulges in their clothing. The court found permissible that, based on his experience and training, in believing that a daylight robbery would involve weapons, that he was permitted to go ahead and conduct a pat-down search. Another line of case law involving furtive movement, including United States v. Garcia Rivera, United States v. McCall, United States v. Flippin, all state that a furtive gesture on the part of a defendant can constitute reasonable suspicion, justifying the belief that he is armed and dangerous and therefore justifying a search. United States v. Garcia Rivera, specifically, a driver was initially... These cases are in your brief, aren't they? They are, Your Honor. But in that case, the driver was initially pulled over for... I can't dissuade you, huh? We know about those cases. I can submit on those cases in my brief, Your Honor. Would the court like for me to talk about whether or not the stop was converted into an arrest because of the circumstances by which it was done? I don't think the briefs are pretty clear. Unless there are any other questions, Your Honors, I will submit. Thank you, Ms. Chang. Thank you, Your Honor. Ms. Young, you've got about a minute and change. Thank you, Your Honor. I just want to briefly focus on the issue of where, in fact, the drugs were found. There was some discrepancy in the record. There was a report submitted by Hauptman, a declaration submitted by Hauptman, in which he said he found the drugs under the seat cushion. But when it came to evidentiary hearing, at that point he admitted the drugs were found underneath the seat itself, and that was also confirmed by Detective Nava. Unless there are any further questions, I'll submit. Thank you, Your Honor. Thank you, Ms. Young. Ms. Chang, thank you as well. The case just argued is submitted. Good morning.
judges: Silverman, Tallman, Rawlinson